UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X
Kyle Donovan,
      Plaintiff,

      v.

East Twelfth Street Tenants Housing
Development Fund Corporation,
      Defendant.
-------------------------------------------------X

**18 Civ. 06950**

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION IN PART ONE**
**<u>FOR A TEMPORARY RESTRAINING ORDER</u>**

T. Bryce Jones
Jones Law Firm, P.C.
43 West 43rd Street, Suite 180
New York, NY 10151
(212) 258-0685
bryce@joneslawnyc.com
Counsel for Plaintiff Kyle Donovan

## I.       INTRODUCTION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure ("Federal Rules"), Plaintiff Kyle Donovan respectfully moves for this Court to issue a Temporary Restraining Order ("TRO") prohibiting Defendant (the "Co-op")[1] from approving the sale of Unit #MW at 527 East 12th Street, New York, NY (the "Unit"), along with the accompanying 250 shares in the cooperative corporation, to any buyer until the Court decides whether to lift the injunction on the forthcoming motion for a preliminary injunction.

As alleged in the verified complaint, Plaintiff executed a contract with the seller of the Unit two months ago. (Exhibit 1 attached to this memorandum.) In fact, Plaintiff agreed to pay ***all cash*** for the Unit. The Co-op, however, has refused to consider the application or interview Plaintiff and refused to provide ***any reason*** for this refusal. The Co-op also refused to communicate any reasons with Plaintiff's lawyer despite the executed contract with the Seller and a demand letter. (Exhibit 2 attached to this memorandum.)

The Co-op is so intertwined with the government as to constitute a state actor under well-established New York law.  *See 512 E. 11th St. HDFC v. Grimmet*, 181 A.D.2d 488 (1st Dept. 1992) (leading case holding that constitutional requirements apply to Housing Development Fund Corporations such as the Co-op). Plaintiff's complaint alleges that the Co-op is acting in an arbitrary and capricious manner or, worse, in a racially discriminatory manner in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. The merits of Plaintiff's case are strong given that the Co-op refuses to give any reason for their refusal to consider Plaintiff's application. Moreover, the sale of the Unit would cause irreparable harm

---

[1] The Defendant Co-op is East Twelfth Street Tenants Housing Development Fund Corporation.

given that the law has long recognized each parcel of real property is unique and cannot be compensated with money damages.

In light of these considerations, Plaintiff requests that the Court issue a TRO maintaining the *status quo*, thereby enjoining the sale of the Unit until the Court may consider the briefing and decide whether to issue a preliminary injunction.[2]

## II.   LEGAL STANDARD

Under Rule 65(b)(1) of the Federal Rules of Civil Procedure ("Federal Rules"), this Court may issue a Temporary Restraining Order if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

This Court should issue a TRO if: (1) it is necessary to prevent irreparable harm; and (2) either (a) movant is likely to prevail on the merits, or (b) movant has shown sufficiently serious questions going to the merits to make them fair ground for litigation, and a balance of the hardships tips decidedly in movant's favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd*, 598 F.3d 30, 35-36 (2d Cir. 2010); *see also Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir. 2010).[3]

---

[2] Prior to filing this motion, Plaintiff's attorney asked the Co-op's attorney if he would agree to waive service of the Complaint and delay the sale of the Unit until the Court could hold a hearing on the preliminary injunction, but Co-op's attorney refused to agree.

[3] "It is well-established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, No. 17-cv-6761, 2017 WL 4685113, at *1 (S.D.N.Y. Oct. 17, 2017); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

### III.    BACKGROUND ON HDFC CO-OPS

Defendant is a Housing Development Fund Corporation ("HDFC"). ¶ 7.[4] HDFCs are a form of co-op housing intended for low- and moderate-income New Yorkers. ¶ 8.[5] Many of these HDFCs date to the 1970s, when the city took over derelict buildings and then allowed tenants to buy them for a nominal fee (*i.e.*, $250) and run them as co-ops. ¶9; *see generally* Michelle Higgins, "Bargains With a 'But'," *N.Y. Times*, June 27, 2014 at E1.

In exchange for accepting income restrictions on purchasers and shareholders for the duration of the existence of the HDFC, the City of New York offers the co-op, among other benefits, a reduction in property taxes. ¶11; *see also* note 2 *supra*. A government agency fixes the rentals of HDFCs, the availability of units to occupants is assured within certain income guidelines, and the use of profits is restricted. *See 601 W. 136 St. HDFC v. Olivares*, 2014 NY Slip. Op. 31474, p.2 (Civ. Ct. NY County 2014) (citing Private Housing Finance Law § 576(1)(a-c)).

The courts of New York have repeatedly held that HDFCs are so intertwined with the government that they constitute state actors and, thus, constitutional protections apply. *See, e.g.*, *512 E. 11th St. HDFC v Grimmet*, 181 A.D.2d 488 (1st Dept 1992), *appeal dismissed* 80 N.Y.2d 892 (1992) (leading case establishing that constitutional protections apply). For example, in *Grimmet*, the tenant's apartment was subject to Rent Stabilization until the building's conversion into an HDFC brought it within a statutory exemption to that law. The Court held that, notwithstanding the fact that the tenant could no longer rely on the Rent Stabilization Law, the HDFC was sufficiently intertwined with the government such that "constitutional due process

---

[4] ¶__ refers to paragraph __ of the initial Complaint filed in this action.

[5] An HDFC is a not-for-profit housing cooperative corporation under General Business Law § 352-eeee and Private Housing Finance Law article XI. ¶8).

protections requiring notice of the reasons for an eviction" applied. *Id.* at 489; *see also 322 W. 47th St. HDFC v Loo*, 50 Misc. 3d 143(A), 2016 NY Slip Op. 50227(U) (1st Dept. 2016); *330 S. Third St., HDFC v Bitar*, 28 Misc. 3d 51, 54 (App Term, 2d Dept. 2010).

## IV.     SUMMARY OF ALLEGATIONS

Plaintiff is an African-American male who entered into a contract to purchase the Unit. ¶5. The contract was executed with the seller of the Unit, non-party Iris Maasdamme ("Seller") who is also the owner of the Unit and the accompanying 250 shares of the Corporation. ¶7. Plaintiff and Seller agreed to a purchase price for the unit of $300,000. ¶12. Plaintiff agreed to pay for the unit with **all cash**. ¶12. Plaintiff's income satisfied the income restrictions for the purchase of a unit in the Co-op. ¶14.

On June 9, 2018, Plaintiff submitted a finalized, detailed, and substantial application to purchase the Unit. ¶15. Less than ten days later, on June 18, 2018, the Corporation's Board denied Plaintiff's application without offering a reason. ¶16. Indeed, the Board declined to interview Plaintiff or consider him. ¶16.

Less than one month later, on July 5, 2018, counsel for Plaintiff sent a demand letter to the Board requesting that the Board reverse its decision as the refusal to consider and denial had been made without any stated reason or inquiry. ¶17. Plaintiff's broker was subsequently told by his broker that the Board did not like what it "saw" when it ran a search of Plaintiff's name on www.google.com. ¶18). When a search for Plaintiff's name is done via google, images of Plaintiff show him to be an African-American man. ¶19.

After the denial of Plaintiff's application, the Unit continued to be listed for sale. ¶ 20. The Board has failed to present to Plaintiff a nondiscriminatory reason, or indeed ***any*** reason, for refusing to consider Plaintiff's application or even interview him. ¶21. Defendant's denial of

Plaintiff's application without interviewing him or otherwise giving any due consideration to his application based on what was seen from a Google search, and otherwise not providing any stated reason for the refusal to consider his purchase of the Unit, is the definition of arbitrary and capricious. Defendant's behavior also establishes a *prima facie* case of invidious racial discrimination.

For these reasons, pursuant to 42 U.S.C. § 1983, Plaintiff alleges the Co-op acted (1) in an arbitrary and capricious manner or, in the alternative, (2) on the basis of Plaintiff's race in violation of the Fourteenth Amendment to the United States Constitution.  Plaintiff now seeks a temporary restraining order so that the property is not sold while these claims are duly considered pending the forthcoming motion for a preliminary injunction.

## V.   THIS COURT SHOULD GRANT THE TEMPORARY RESTRAINING ORDER

### A.   Plaintiff will suffer irreparable harm if the sale of the property is not enjoined

Courts have routinely held that the unique nature of real property supports equitable relief in real estate related cases. *See, e.g.*, *EMF Gen. Contracting Corp. v. Bisbee*, 6 A.D.3d 45, 52 (1st Dep't 2004) (stating "specific performance is routinely awarded in contract actions involving real property, on the premise that each parcel of real property is unique"). That is, real property, such as the Unit in the Co-op, is unique and its loss cannot be adequately compensated for with money damages. *See id.* (citing 3 Dobbs, Remedies § 12.11[3]).[6] A TRO should be issued to maintain the *status quo* and prevent the irreparable harm that Plaintiff would suffer if

---

[6] An exception to this rule that does not apply here is when a purchaser's interests in the property are purely commercial and when the purchaser is not concerned with the unique aspects of the property. *See SK Greenwich LLC v. W-D Grp. (2006) LP*, 10 Civ. 7846 (RPP), 2010 WL 414 0445, at *3 (S.D. N.Y. Oct. 21, 2010).  Plaintiff seeks to purchase the Unit as a home.

the property -- for which a contract was already entered -- were sold to another buyer because of Defendant's unlawful conduct.

Finally, a showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction or temporary restraining order. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Thus, this factor weighs in favor of granting the injunction so that the Court may consider the motion on the preliminary injunction.

**B.    Plaintiff is likely to succeed or, in the alternative, there are sufficient questions going to the merits and the balance favors Plaintiff**

In addition to irreparable harm, Plaintiff must show (1) that he is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair-ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party. *See Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir. 2010) (citing *Citigroup Global Mkts.,* 598 F.3d at 34-35). The "serious question" standard introduces a level of flexibility that "permits a district court to grant a [TRO or preliminary injunction] in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets*, 598 F.3d at 35.

Plaintiff's allegations show that he is more than likely to succeed on the merits. Housing development fund corporations, or HDFCs, such as Defendant are state actors and must follow the dictates of the Constitution. *See HDFC v. Grimmett*, 81 A.D.2d 488, 489 (1992). A bedrock principle of the Fourteenth Amendment is that state actors may not treat or otherwise discriminate against people in an arbitrary or capricious manner. *See Gelb v. Board of Elections of New York*, 224 F.3d 149, 157 (2d Cir. 2000) (citing *Village of Willowbrook v. Olech*, 528 U.S.

562 (2000)). Since the ratification of the Fourteenth Amendment, the Supreme Court has held that discrimination is arbitrary if the criterion upon which it is based has no legitimate purpose. *See Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) (holding that equal protection precluded the use of "purely personal and arbitrary power").

In this case, the Co-op's Board denied Plaintiff's application without any explanation, and less than ten days after he submitted his finalized application, despite the executed contract with the Seller. After Plaintiff asked for an explanation for the completely unexpected refusal to consider the application, and Plaintiff heard from his broker that a member of the Board did not like what he or she "saw" when searching Plaintiff's name on Google (*i.e.*, an African-American man), the Board refused to respond. Given that Plaintiff was offering to pay for the Unit in all cash, and fully qualified, and the contract was executed with the Seller, the Board's refusal to consider the application or even conduct an interview is the definition of arbitrary and capricious.

Perhaps worse is that the most likely explanation is that the Board is engaging in racial discrimination. Courts analyze discrimination claims under Section 1983 using "the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (explaining that the elements of an equal protection claim under § 1983 and a claim of discrimination under Title VII are the same and thus the burden-shifting framework applies to both).

Under *McDonnell Douglas*, the initial burden rests with the plaintiff to establish a *prima facie* case of intentional discrimination by alleging that that (a) he is a member of a protected class; (b) he qualified for a covered housing-related service or activity (*e.g.*, housing rental or

purchase); (c) the defendant denied an application or refused to negotiate; and (d) the relevant housing-related service or activity remained available after it was revoked from or denied to the plaintiff

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide evidence that the revocation or denial of the housing benefit furthered a legitimate, nondiscriminatory purpose. The Supreme Court has explained that "[t]he explanation provided must be legally sufficient to justify a judgment for the defendant." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The justification requires actual evidence and must be more than "an answer to the complaint or [an] argument by counsel." *Id.* at 256 n.9 ("An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel."). Finally, if the defendant is able to meet this burden, then the plaintiff can still prevail on his disparate treatment claim if his is able to show, by a preponderance of the evidence (gathered during discovery), that the stated purpose for the denial or revocation was really just a pretext for discrimination.

In this case, Plaintiff has established a *prima facie* case of discrimination: (1) Plaintiff is African-American and there is evidence that the Board knew this fact after it ran a google search on him; (2) he was qualified to purchase the Unit and, in fact, agreed to pay in all cash after executing the contract; (3) defendant denied an application and refused to negotiate or otherwise consider the application; and (d) the Unit has remained available after being denied to the plaintiff.[7]   Moreover, Defendant has offer no reason for this denial -- much less a legally sufficient reason to justify a judgment for the defendant.

---

[7] The plaintiff's burden of proof as to this first step has been characterized as "minimal" and "de minimis." *See Zann Kwan v. Adalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).

Thus, Plaintiff is likely to succeed on the merits of the action.  At the very least, there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and the balance of hardships tips decidedly in favor of the moving party.  Here, Plaintiff will lose the ability to purchase a home for which he is more than qualified.  In contrast, Defendant has not -- and cannot -- point to any harm it will suffer if it approves of the Plaintiff's contract with the Seller.

Indeed, because Defendant will not suffer any harm if the Unit is sold to Plaintiff, no bond or security should be imposed on him under Rule 65(c). As the Second Circuit has explained, the phrase "in such sum as the court deems proper" in Rule 65(c):

> indicates that the District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued "to aid and preserve the court's jurisdiction over the subject matter involved.

*Doctor's Assoc., Inc. v. Stuart*, 85 F3d 975, 985 (2nd Cir. 1996). (quoting *Ferguson v. Tabah,* 288 F.2d 665, 675 (2d Cir.1961)). Because Defendant will come to no harm if the Temporary Restraining Order is issued, no security should be required while the forthcoming motion for the preliminary injunction is pending.

## VI.    CONCLUSION

For the reasons above, Plaintiff Kyle Donovan respectfully requests that this Court temporarily enjoin the Co-op from approving the sale of a unit at 527 East 12th Street in the City of New York, along with the accompanying 250 shares, until the Court may consider the forthcoming motion for a preliminary injunction.

DATED: August 2, 2018

                                                  Respectfully Submitted,

/s/T. Bryce Jones, Esq.
T. Bryce Jones, Esq.
JONES LAW FIRM, P.C.
43 W 43rd Street, Suite 180
New York, NY 10036
(212) 258-0685
bryce@joneslawnyc.com
*Attorneys for Plaintiff Kyle Donovan*

## Certification Under Fed. R. Civ. P. 65(b)(1)(B)

I, Bryce Jones, an attorney duly admitted in this Court, and counsel of record for Plaintiff, hereby certify the following under penalty of perjury:

1.     On August 2, 2018, I contacted the attorney for the Defendant Co-op in this case (*i.e.*, the attorney for East Twelfth Street Tenants Housing Development Fund Corporation). Approximately one month earlier, I had sent him a demand letter informing him that Plaintiff was going to file a complaint against his client.

2.     I informed the Co-op's attorney that I expected to file a verified complaint in this Court today (August 2, 2018).  That complaint has been filed under 18 Civ. 06950 in this District.

3.     I asked that his client waive service of the complaint and agree not to approve any sale of the unit at 527 East 12th Street, New York, NY (the "Unit") until Plaintiff's motion for a preliminary injunction could be briefed and fully considered by this Court.

4.     I informed the attorney that I would file the motion for a preliminary injunction on or before Monday, August 6, 2018.

4.     The attorney stated that he could attend a TRO hearing on Friday, August 3, 2018.

5.     The attorney for the Co-op stated he could not agree to delay the closing of the sale of the Unit so that the Court could consider the motion for a preliminary injunction.

6.     After the conversation, I sent opposing counsel a letter confirming the substance of the conversation.

7.     In light of the foregoing, and the fact that harm to personal property including its unlawful sale, is an irreparable injury, I have filed a motion for a temporary restraining order which I respectfully request that the Court issue.

DATED: August 2, 2018

Respectfully Submitted,

/s/T. Bryce Jones, Esq.
T. Bryce Jones, Esq.
JONES LAW FIRM, P.C.
43 W 43rd Street, Suite 180
New York, NY 10036
(212) 258-0685
bryce@joneslawnyc.com
*Attorneys for Plaintiff Kyle Donovan*