14

any default by the Lessee and to remove such portions of the walls, floors and ceilings of the apartment and storage space as may be required for any such purpose, but the Lessor shall thereafter restore the apartment and storage space to its proper and usual condition at Lessor's expense if such repairs are the obligation of Lessor, or at Lessee's expense if such repairs are the obligation of Lessee, are caused by the act or omission of the Lessee or any of the Lessee's family, guests, roommate, or agents, employees or subtenents.

**Key**

In order that the Lessor shall at all times have access to the apartment or storage rooms for the purposes provided for in this lease, the Lessee shall provide the lessor with a key to each lock providing access to the apartment or the storage rooms, and if any lock shall be altered or new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation. If the Lessee shall not be personally present to open and permit an entry at any time when an entry therein shall be necessary or permissible hereunder and shall not have furnished a key to Lessor, the Lessor or the Lessor's agents (but, except in an emergency, only when specifically authorized by an officer of the Lessor) may forcibly enter the apartment or storage space without liability for damages by reason thereof (if during such entry the lessor shall accord reasonable care to the Lessee's property), and without in any manner affecting the obligations and covenants of this lease.  The right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability for the care or supervision of the apartment, or any of the pipes, fixtures, appliances or appurtenances therein contained, except as herein specifically provided.

**Waivers**

26.   The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the provisions of this lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding, shall not be construed as a waiver, or a relinquishment for the future, of any such provisions, options or rights, but such provision, option or right shall continue and remain in full force and effect.  The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless in a writing expressly approved by the Directors.

**Notices**

27.   Any notice by or demand from either party to the other shall be duly given only if in writing and either personally served or sent by registered or certified mail, return receipt requested; if by the Lessee, addressed to the Lessor at the building with a copy sent by regular mail to the Lessor's Managing Agent; if to the Lessee, addressed to the building.  Either party may by notice served in accordance herewith designate a different address for service of such notice or demand.  Notices or demands shall be deemed given on the date when mailed.

**Reimbursement of Lessor's Expenses**

28.   If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought

84

15

by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

**Lessor's Immunities**

29(a)   The Lessor shall not be liable, except by reason of Lessor's negligence, for any failure or insufficiency of heat, water supply, electric current, gas, telephone or elevator service or other service to be supplied by the Lessor hereunder, or for interference with light, air, view or other interests of the Lessee.

Unless due to the Lessor's negligence, no abatement of rent or other compensation or claim of eviction shall be made or allowed if accidents, alterations, repairs or strikes, difficulty or delay in securing supplies or labor, or other cause beyond Lessor's control causes (i) the making or failure to make or delay in making any repairs, alterations or decorations to the building, or any fixtures or appurtenances therein, or (ii) the taking of space to comply with any law, ordinance or governmental regulation, or (iii) the interrupting or curtailing of any service agreed to be furnished by the Lessor.

**Storage Space and Laundry**

(b)   If the Lessor shall furnish to the Lessee any storage bins or space, the use of a laundry, or any facility outside the apartment, including but not limited to a television antenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license.   The Lessee shall not use such storage space for the storage of valuable or perishable property and any such storage space assigned to Lessee shall be kept by Lessee clean and free of combustibles.   If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and repair and that the Lessor is not responsible for such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that Lessee may make of such equipment shall be at his own cost, risk and expense.

**Automobiles and Other Property**

(c)   The Lessor shall not be responsible for any damage to any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee hereby agrees to hold the Lessor harmless from any liability arising from any injury to person or property caused by or with such automobile or other vehicle while in the care of such employee. The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the apartment by theft or otherwise.

**Window Cleaning**

30.   The Lessee will not require, permit, or allow the cleaning of any window in the premises from the outside (within the meaning of Section 202 of the New York Labor Law) unless the equipment and safety devices required by law, ordinance, rules and regulations, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the industrial code of the State of New York is fully complied with; and the Lessee hereby

85

16

agrees to indemnify the Lessor and its employees, other lessees, and the managing agent, for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

**Termination of Lessee by Lessor**

31.   If upon, or at any time after, the happening of any of the events mentioned in subdivisons (a) to (i) of this Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or otherwise, and to repossess the apartment in its former estate as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, re-possession and removal herein granted and reserved:

**Lessee Ceasing to Hold Accompanying Membership Certificates or Shares**

(a)   If the Lessee shall cease to be the holder of the membership certificate or the shares to which this lease is appurtenant, or if this lease shall pass or be assigned to anyone who is not then the holder of the membership certificate or shares;

**Lessee Becoming a Bankrupt**

(b)   If at any time during the term of this lease, **(i)** the then holder hereof shall be adjudicated a bankrupt under the laws of the United States; or **(ii)** a receiver of all the property of such holder or of this lease shall be appointed under any provision of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver shall not be vacated within thirty days; or **(iii)** such holder shall make a general assignment for the benefit of creditors; or **(iv)** the membership certificate or the shares of such holder to which this lease is appurtenant shall be duly levied upon under the process of any court whatever unless such levy shall be discharged within thirty days; or **(v)** this lease or the membership certificate or any of the shares to which it is appurtenant shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this subsection **(v)** shall not be applicable if this lease shall devolve upon the executors or administrators of the Lessee and provided that within sixty (60) days (which period may be extended by the Directors) after the death said lease and membership certificate or shares shall have been transferred to any assignee in accordance with Paragraph 16 hereof;

17

**Assignment, Subletting or Unauthorized Occupancy**

(c) If there be an assignment of this lease, or any subletting hereunder, without full compliance with the requirements of Paragraph 15 or 16 or 38 hereof; or if any person not authorized by Paragraph 14 shall be permitted to use or occupy the apartment, and the Lessee shall fail to cause such unauthorized person to vacate the apartment within thirty days after written notice from the Lessor;

**Default in Rent**

(d) If the Lessee be in default for a period of one month in the payment of any rent or additional rent or of any installment thereof and shall fail to cure such default within ten days after written notice from the Lessor;

**Default in Other Covenants**

(e) If the Lessee shall be in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall continue for thirty days after written notice from the Lessor;

**Lessee's Objectionable Conduct**

(f) If at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors, at a meeting duly called for that purpose, that because of objectionable conduct on the part of the Lessee, or of a person dwelling or visiting in the apartment, the tenancy of the Lessee is undesirable, if repeated after written notice from the Lessor;

**Termination of All Proprietary Leases**

(g) If at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors at a meeting of such directors duly called for that purpose, and the affirmative vote of at least 75% of the members or shareholders at a members' or shareholders' meeting duly called for that purpose, to terminate all proprietary leases;

**Destruction of Building**

(h) If the building shall be destroyed or damaged and the members or shareholders shall decide to not repair or rebuild as provided in Paragraph 4;

**Condemnation**

(i) If at any time the building or a substantial portion thereof shall be taken by condemnation proceedings.

**Lessor's Rights After Lessee's Default**

32.(a) In the event the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in the payment of any rent or additional rent due hereunder, or on the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in subsections (a) to (f) inclusive of Paragraph 31, Lessee shall continue to remain liable for payment of a sum equal to the rent which would have become due hereunder and shall pay the same in installments at the time such rent would be due hereunder. No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment. After resuming possession, the Lessor may, at its option, from time to time (i) relet the apartment for its own account, or (ii) relet the apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term

13

or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent, in its discretion. Any reletting of the apartment shall be deemed for the account of the Lessee, unless within ten days after such reletting the Lessor shall notify the Lessee that the premises have been relet for the Lessor's own account. The fact that the Lessor may have relet the apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account. If the Lessor relets the apartment as agent for the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions and a reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the apartment, apply the remaining amount of such reletting against the Lessee's continuing obligations hereunder. There shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiraton of the term of this lease as stated in the first clause of this Lease, (B) the date as of which a new proprietary lease covering the apartment shall become effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account; (D) the date upon which all proprietary leases of the Lessor terminate. From and after the date upon which the Lessor become obligated to account to the Lessee, as above provided, the Lessor shall have no further duty to account to the Lessee for any amount of reletting and the Lessee shall have no further liablility for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

**Collection of Rent from Subtenants**

(b) If the Lessee shall at any time sublet the apartment and shall default in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default shall continue, demand and receive from the subtenant the rent due or becoming due from the subtenant to the Lessee, and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such subtenant to the Lessee to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed a consent to or approval of any subletting or assignment by the Lessee or a release or discharge of any of the obligations of the Lessee hereunder.

**Surrender & Sale of Membership Certificates or Shares**

(c) Upon the termination of this lease under the provisions of subdivisions (a) to (f) inclusive of Paragraph 31, the Lessee shall surrender to the corporation the membership certificate or shares of the corporation held by the Lessee to which this lease is appurtenant. Whether or not the certificate or shares are surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new membership certificate or a new certificate for the shares of the Lessor owned by the Lessee and allocated to the apartment when a purchaser therefor is obtained, provided that the issuance of the membership certificate or shares and the lease to such purchaser is authorized by a resolution of the Directors, or

19

by a writing signed by a majority of the Directors or by a majority of the members or shareholders. Upon such issuance, the certificate held by the Lessee shall be automatically cancelled and rendered null and void.   The Lessor shall apply the proceeds received for the issuance of such membership certificates or shares towards the payment of the Lessee's indebtedness hereunder, including interest, attorneys' fees and other expenses incurred by the Lessor, and, if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for the balance of the indebtedness.   Upon the issuance of any new proprietary lease and certificate, the Lessee's liability hereunder shall cease and the Lessee shall only be liable for rent and expenses accrued to that time.   The Lessor shall not, however, be obligated to sell such member certificate or shares and appurtenant lease or otherwise make any attempt to mitigate damages.

**Waiver of Right of Redemption**

      **33.**   The Lessee hereby expressly waives any and all right of redemption in case the Lessee shall be dispossessed by judgment or warrant of any court or judge.   The words "enter", "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning.

**Surrender of Possession**

      **34.**   Under the termination of this lease under the provisions of subdivisions (a) to (f) inclusive of Paragraph 31, the Lessee shall remain liable as provided in Paragraph 32 of this lease.   Upon the termination of this lease under any other of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination.   On or before any such termination, the Lessee shall vacate the apartment and surrender possession thereof to the Lessor or its assigns, and upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the apartment, or in the building of which it is a part.

**Lessee's Option to Cancel**

      **35.(a)**   This lease may be cancelled by the Lessee on the last day of any month (Date of Cancellation), upon complying with all the provisions herinafter set forth.   Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor at least four months prior to the date of cancellation.   At the time of giving such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

**Deposits Required**

      **(i)**   the Lessee's counterpart of this lease with a written assignment in form required by the Lessor, in blank, effective as of the date of cancellation, free from all subleases, tenancies, liens, encumbrances and other charges whatsoever;

20

   (ii) the Lessee's membership certificate or the Lessee's shares of the Lessor endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon;

   (iii) a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this lease, the right to and intends to remove.

**Removal of Fixtures**

   (b) All additions, improvements, appliances and fixtures which are removable under the terms of this lease and which are enumerated in the statement made as provided in subdivision (iii) above shall be removed by the Lessee prior to the date of cancellation, and on or before the date of cancellation the Lessee shall deliver possession of

**Possession**

the apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition and free from all subleases and tenancies, liens, encumbrances and other charges and pay to the Lessor all rent, additional rent and other charges which shall be payable under this lease up to and including the date of cancellation.

**Permission to Show and Occupy Premises**

   (c) The Lessor and its agents may show the apartment to prospective lessees, contractors and architects at reasonable times after notice of Lessee's intention to cancel.

**Effective Date of Cancellation**

   (d) If the Lessee is not otherwise in default hereunder and if the Lessee shall have timely complied with all of the provisions of subdivisions (a) and (b) hereof, then this lease shall be cancelled and all rights, duties and obligations of the parties hereunder shall cease as of the date of cancellation fixed in said notice, and the membership certificate or shares of Lessor shall become the absolute property of the Lessor, provided, however, that the Lessee shall not be released from any indebtedness owing to the Lessor on date of cancellation.

**Rights on Lessee's Default**

   (e) If the Lessee shall give notice but fail to comply with any of the other provisions of this paragraph, the Lessor shall have the option at any time prior to the date of cancellation (i) of returning to the Lessee this lease, the membership certificate or shares and other documents deposited, and thereupon the Lessee shall be deemed to have withdrawn the notice of intention to cancel this lease, or (ii) treating this lease as cancelled as of the date of cancellation and bringing such proceedings and actions as it may deem best to enforce the covenants of the Lessee hereinabove contained and to collect from the Lessee the payments which the Lessee is required to make hereunder, together with reasonable attorneys' fees and expenses.

**Extension of Option to Cancel**

   36.(a) If on the last day of any month the total number of membership certificates or shares owned by Lessees holding proprietary leases, who have given notice pursuant to Paragraph 35 of intention to cancel such proprietary leases four months thereafter, shall equal ten percent (10%) or more of the Lessor's outstanding

membership certificates or shares, then the Lessor shall, prior to the last day of the following month, give written notice to the holders of all issued membership certificates or shares stating the total number of membership certificates or shares then outstanding and in its treasury and the total number of membership certificates or shares owned by Lessees holding proprietary leases who have given notice of intention to cancel. In such case, the proprietary Lessees to whom such notice shall be given shall have the right to cancel their leases in compliance with the provisions of Paragraph 35 hereof, provided only that written notice of the intention to cancel such leases shall be given at least two months prior to the above-mentioned date of cancellation.

**Right of Lessees to Cancel**

(b)  If Lessees owning at least 80% of the then issued and outstanding membership certificates or shares of the Lessor shall take exercise their option to cancel their leases on the last day of one particular month, then this and all other proprietary leases shall thereupon terminate on that date of cancellation as though every Lessee had exercised such option.  In such event, none of the Lessees shall be required to surrender his or her membership certificate or shares to the Lessor all unsold membership certificates or shares to the Lessor and all membership certificates or shares delivered to the Lessor by those who had served notice of intention to cancel their leases under the provisions hereof, shall be returned to such Lessees.

**Continuance of Cooperative Management of Building After All Leases Terminate**

37.  No later than thirty days after the termination of all proprietary leases, whether by expiration of their terms or otherwise, a special meeting of members or shareholders of the Lessor shall take place to determine whether to  (A) continue to operate the building as a residential apartment building, (B) alter or rebuild the building or any part thereof, or (C) sell the building and distribute the assets of Lessor as directed in the Certificate of Incorporation, By-laws, and Article XI of the Private Housing Finance Law.

**Unsold Shares**

38.(a)  The term "Unsold Membership Certificates or Shares" means the membership certificates or shares of the Lessor which are issued by the Lessor and are allocated either to (i) the apartments of non-purchasing tenants, or (ii) the apartments which are unoccupied at the time the Offering Plan of the corporation is declared effective. The Lessor shall retain all "Unsold Membership Certificates or Shares" and may sell such membership certificates or shares provided two-thirds of the Directors approve and all membership certificates or shares which are Unsold Shares retain their character as such (regardless of transfer) until (A) such membership certificates or shares become the property of a purchaser for bona fide occupancy (by himself or herself or by a member of his or her family) of the apartment to which such membership certificates or shares are allocated, or (B) the holder of such membership certificates or shares (or a member of his or her family) becomes a bona fide occupant of the apartment.  Once previously unsold membership certificates or shares are purchased, this Paragraph shall not apply to the purchaser.

22

**Subletting Apartment and Sale of Membership Certificates or Shares**

(b)  The subletting of the apartment and the assignment of this lease by the Lessee who is the holder of Unsold Membership Certificates or Shares allocated thereto, shall require the consents of the Directors or the members or shareholders, as provided in Paragraphs 15 and 16.

**Change in Form of Lease**

(c)  Without the Lessee's consent, except as otherwise set forth in the Certificate of Incorporation or By-laws, no change in the form, terms, or conditions of this proprietary lease, as permitted by Paragraph 6 shall (i) affect the rights of the Lessee who is the holder of the Unsold Membership Certificate or Shares accompanying this lease to sublet the apartment or to assign this lease, as provided in this paragraph, or (ii) eliminate or modify any rights, privileges or obligations of such Lessee.

**No Voluntary Cancellation**

(d)  The provisions of Paragraph 35 are not applicable to Lessees who are the holders of Unsold Membership Certificates or Shares accompanying this lease.

**Foreclosure— Receiver of Rents**

39.  Notwithstanding anything contained in this lease, if any action shall be instituted to foreclose any mortgage on the land or the building or the leasehold of the land or building, the Lessee shall, on demand, pay to the receiver of the rents appointed in such action rent, if any, owing hereunder on the date of such appointment and shall pay thereafter to such receiver in advance, on the first day of each month during the pendency of such action, as rent hereunder, the rent for the apartment last as determined and established by the Directors prior to the commencement of said action, and such rent shall be paid during the period of such receivership, whether or not the Directors shall have determined and established the rent payable hereunder for any part of the period during which such receivership may continue.  The provisions of this Paragraph are intended for the benefit of present and future mortgages of the land or the building or the leasehold of the land or building and may not be modified or annulled without the prior written consent of such mortgagee.

**To Whom Covenants Apply**

40.  The references herein to the Lessor shall be deemed to include its successors and assigns, and the references herein to the Lessee or to a member or shareholder of the Lessor shall be deemed to include the executors, administrators, legal representatives, legatees, distributees and assigns of the Lessee or of such member or shareholder; and the covenants herein contained shall apply to, bind and inure to the benefit of the Lessor and its successors and assigns and the Lessee and the executors and administrators, legal representatives, legatees, distributees and assigns of the Lessee, except as herinabove stated.

**Waiver of Trail by Jury**

41.  To the extent permitted by law, the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Lessee's use or occupancy of the apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment.

23

**Lessor's Additional Remedies**
42. In the event of a breach or threatened breach by Lessee of any provision hereof, the Lessor shall have the right of injunction and the right to invoke any remedy at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy.

**Lessee More Than One Person**
43. If more than one person is named as Lessee hereunder, the Lessor may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Lessee hereunder, including, without limitation, the surrender or assignment of this lease, or any request for consent to assignment or subletting. Each person named as Lessee shall be jointly and severally liable for all of the Lessee's obligations hereunder. Any notice by the Lessor to any person named as Lessee shall be sufficient, and shall have the same force and effect, as though given to all persons named as Lessee.

**Effect of Partial Invalidity**
44. If any clause or provision herein contained shall be adjudged invalid, the same shall not effect the validity of any other clause or provision of this lease, or constitute any cause of action in favor of either party as against the other.

**Marginal Headings**
45. The marginal headings of the several paragraphs of this lease shall not be deemed as part of this lease.

**No Discrimination**
46. Neither the Lessor nor the Lessee will discriminate against any person because of his or her race, creed, religion, color, national origin, age, sex, sexual orientation or affectional preference, or other ground proscribed by law when exercising any right reserved to it in this lease.

**Changes to be in Writing**
47. The provisions of this lease cannot be changed orally. IN WITNESS WHEREOF, the parties have executed this lease.

Lessor

By:

President or Vice President
L.S.

Secretary or Treasurer
L.S.

Lessee
L.S.

93

### HOUSE RULES

(1)  The public halls and stairways of the building shall not be obstructed or used for any purpose other than entrance to and exit from the apartments in the building, and the fire towers shall not be obstructed in any way.

(2)  Children shall not play in the public halls, courts, stairways, fire towers or elevators and shall not be permitted on the roof unless accompanied by a responsible adult.

(3)  No public hall above the ground floor of the building shall be decorated or furnished by any Lessee in any manner without the prior consent of all of the Lessees on that floor; in the event of disagreement among Lessees, the Board of Directors shall decide.

(4)  No Lessee shall make or permit any disturbing noises in the building or do or permit anything to be done therein which will interfere with the rights, comfort or convenience of other Lessees.  No Lessee shall play or allow to be played any musical instrument or permit to be played a phonograph or a radio or television in a loud manner between the hours of eleven o'clock p.m. and the following eight o'clock a.m. so as to disturb or annoy other occupants of the building.  No construction or repair work or other installation involving noise shall be conducted in any apartment except on weekdays (not including legal holidays) and   only between the hours of 8:30 a.m. and 5:00 p.m.

(5)  No article shall be placed in the halls or on the staircase landings or fire towers, nor shall anything be hung or shaken from the doors, windows, terraces or balconies or placed upon the window sills of the building.

(6)  Awnings, window air-conditioning units or ventilators may be used in or about the building except such as shall have been expressly disapproved by the Lessor.  No other object shall be projected out of any window of the building without express approval by the Lessor.

(7)  No sign, notice, advertisement or illumination shall be written on or hung from any window or other part of the building, except as has been approved in writing by the Lessor or the managing agent.

(8)  No baby carriages, bicycles, scooters or similar vehicles shall be stored in a passenger elevator nor shall any of the above mentioned vehicles be allowed to stand in the public halls, passageways, areas or courts of the building.

(9)  Messengers and tradespeople shall be use such means of entrance and exit as shall be designated by the Lessor.

EXHIBIT 6

95

(10)   Garbarge and refuse from the apartments shall be disposed of only at such times and in such manner as the superintendent or the managing agent of the building may direct.

(11)   Toilets and other plumbing fixtures in the building shall not be used for any purposes other than those for which they were constructed, nor shall any sweepings, rubbish, rags or any other articles be thrown into toilets.   The cost of repairing any damage resulting from misuse of any toilets or other plumbing fixtures shall be paid for by the Lessee in whose apartment it shall have been caused.

(12)   No Lessee shall send any employee of the Lessor out of the building on any private business of a Lessee.

(13)   Birds or animals may be kept in an apartment unless they are, in each instance, expressly disapproved in writing by the Lessor.   In no event shall dogs be permitted on elevators or in any of the public portions of the building unless carried or on leash.

(15)   No radio or television antenna shall be attached to or hung from the exterior of the building without the prior written approval of the Lessor.

(15)   No vehicle belonging to a Lessee or to a member of the family or guest, roommate, subtenant or employee of a Lessee shall be parked in such a manner as to impede or prevent ready access to any entrance of the building by another vehicle.

(16)   The Lessee shall use the available laundry facilities, if any, only upon such days and during such hours as may be designated by the Lessor.

(17)   The Lessor shall have the right from time to time to curtail or relocate any space devoted to storage or laundry purposes.

(18)   Complaints regarding the service of the building shall be made in writing to the managing agent of the Lessor or the Lessor.

(19)   Any consent or approval given under these House Rules by the Lessor shall be revocable at any time.

(20)   If there be a garage in the building, the Lessee will abide by all arrangements made by the Lessor with the garage operator with regard to the garage and the driveways thereto.

(21)   The following rules shall be observed with respect to incinerator equipment, if any:

(i)       All wet garbage is to be securely wrapped in small package size to fit easily into the hopper panel.

(ii)      Garbage should be completely drip-free before it leaves the apartment and carried to the incinerator closet in a careful manner and in a drip-proof container, then placed into the hopper so it will drop into the opening for disposal.

96

2

## HOUSE RULES

(1)  The public halls and stairways of the building shall not be obstructed or used for any purpose other than entrance to and exit from the apartments in the building, and the fire towers shall not be obstructed in any way.

(2)  Children shall not play in the public halls, courts, stairways, fire towers or elevators and shall not be permitted on the roof unless accompanied by a responsible adult.

(3)  No public hall above the ground floor of the building shall be decorated or furnished by any Lessee in any manner without the prior consent of all of the Lessees on that floor; in the event of disagreement among Lessees, the Board of Directors shall decide.

(4)  No Lessee shall make or permit any disturbing noises in the building or do or permit anything to be done therein which will interfere with the rights, comfort or convenience of other Lessees.  No Lessee shall play or allow to be played any musical instrument or permit to be played a phonograph or a radio or television in a loud manner between the hours of eleven o'clock p.m. and the following eight o'clock a.m. so as to disturb or annoy other occupants of the building.  No construction or repair work or other installation involving noise shall be conducted in any apartment except on weekdays (not including legal holidays) and  only between the hours of 8:30 a.m. and 5:00 p.m.

(5)  No article shall be placed in the halls or on the staircase landings or fire towers, nor shall anything be hung or shaken from the doors, windows, terraces or balconies or placed upon the window sills of the building.

(6)  Awnings, window air–conditioning units or ventilators may be used in or about the building except such as shall have been expressly disapproved by the Lessor.  No other object shall be projected out of any window of the building without express approval by the Lessor.

(7)  No sign, notice, advertisement or illumination shall be written on or hung from any window or other part of the building, except as has been approved in writing by the Lessor or the managing agent.

(8)  No baby carriages, bicycles, scooters or similar vehicles shall be stored in a passenger elevator nor shall any of the above mentioned vehicles be allowed to stand in the public halls, passageways, areas or courts of the building.

(9)  Messengers and tradespeople shall be use such means of entrance and exit as shall be designated by the Lessor.

EXHIBIT 6

95

(10)   Garbage and refuse from the apartments shall be disposed of only at such times and in such manner as the superintendent or the managing agent of the building may direct.

(11)   Toilets and other plumbing fixtures in the building shall not be used for any purposes other than those for which they were constructed, nor shall any sweepings, rubbish, rags or any other articles be thrown into toilets.   The cost of repairing any damage resulting from misuse of any toilets or other plumbing fixtures shall be paid for by the Lessee in whose apartment it shall have been caused.

(12)   No Lessee shall send any employee of the Lessor out of the building on any private business of a Lessee.

(13)   Birds or animals may be kept in an apartment unless they are, in each instance, expressly disapproved in writing by the Lessor.   In no event shall dogs be permitted on elevators or in any of the public portions of the building unless carried or on leash.

(15)   No radio or television antenna shall be attached to or hung from the exterior of the building without the prior written approval of the Lessor.

(15)   No vehicle belonging to a Lessee or to a member of the family or guest, roommate, subtenant or employee of a Lessee shall be parked in such a manner as to impede or prevent ready access to any entrance of the building by another vehicle.

(16)   The Lessee shall use the available laundry facilities, if any, only upon such days and during such hours as may be designated by the Lessor.

(17)   The Lessor shall have the right from time to time to curtail or relocate any space devoted to storage or laundry purposes.

(18)   Complaints regarding the service of the building shall be made in writing to the managing agent of the Lessor or the Lessor.

(19)   Any consent or approval given under these House Rules by the Lessor shall be revocable at any time.

(20)   If there be a garage in the building, the Lessee will abide by all arrangements made by the Lessor with the garage operator with regard to the garage and the driveways thereto.

(21)   The following rules shall be observed with respect to incinerator equipment, if any:

(i)      All wet garbage is to be securely wrapped in small package size to fit easily into the hopper panel.

(ii)     Garbage should be completely drip-free before it leaves the apartment and carried to the incinerator closet in a careful manner and in a drip-proof container, then placed into the hopper so it will drop into the opening for disposal.

96