```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   KYLE DONOVAN,

 4                  Plaintiff,

 5           v.                              18 Civ. 6950 (PGG)

 6   EAST 12th STREET TENANTS
     HOUSING DEVELOPMENT FUND
 7   CORPORATION,

 8                  Defendant.

 9   ------------------------------x
                                             New York, N.Y.
10                                           August 28, 2018
                                             2:15 p.m.
11
     Before:
12
                        HON. PAUL G. GARDEPHE,
13
                                             District Judge
14

15                         APPEARANCES

16   T. BRYCE JONES
          Attorney for Plaintiff
17

18   MICHAEL SCHWARTZ
          Attorney for Defendant
19

20

21

22

23

24

25
```

1        THE COURT:  I'm calling the case of Donovan v. East
2   12th Street Housing Tenants Development Fund Corporation.
3        Could the lawyers enter their appearances.
4        MR. JONES:  Bryce Jones from the Jones Law Firm for
5   Donovan.
6        MR. SCHWARTZ:  Michael Schwartz, Schwartz Law, P.C.
7   for East 12th Street Housing Tenants Development Fund
8   Corporation.
9        THE COURT:  Pending before me is plaintiff's
10  application for a temporary restraining order.  I'm going to
11  start with the factual background.
12       This is a Section 1983 action in which plaintiff Kyle
13  Donovan, an African-American male, alleges that defendant East
14  12th Street Tenants Housing Development Fund Corporation, a
15  nonprofit housing cooperative corporation, violated the
16  Fourteenth Amendment of the United States Constitution by
17  refusing to consider plaintiff's purchase of [an apartment]
18  after plaintiff entered a contract to purchase a unit along
19  with the accompanying 250 shares of the corporation."  Citing
20  Complaint Docket No. 1, Paragraphs 1, 5, and 8.
21       Plaintiff entered into a contract of sale with the
22  owner of unit MW at 527 East 12th Street in Manhattan in which
23  he agreed to purchase the apartment for $300,000 and agreed to
24  pay the purchase price in cash.  Id. paragraph 13.  The
25  complaint further alleges that plaintiff's income meets the

1    co-op's requirements.  Id. paragraph 15.

2              On June 9, 2018, plaintiff submitted to the co-op
3    board a finalized application to purchase unit MW.  Id.
4    paragraph 16.  On June 18, 2018, defendant's board denied
5    plaintiff's application without offering a reason for the
6    rejection.  Id. paragraph 17.  The board also declined to
7    interview plaintiff or to otherwise consider him.  Id.

8              On July 15, 2018, plaintiff's counsel sent a letter to
9    defendant's board, requesting that the board reverse its
10   decision, noting that the denial of the application had been
11   made without any stated reason and without any inquiry.  Id.
12   paragraph 18.  Plaintiff's broker was subsequently told that
13   the board did not like what it "saw" When it ran a search of
14   plaintiff's name on Google.  Id. paragraph 19.  According to
15   plaintiff, when a Google search is performed on his name,
16   images of plaintiff appear that show him to be an African
17   American man.  Id. paragraph 20.

18             After the denial of plaintiff's application, the unit
19   MW continued to be listed for sale, Id. paragraph 21, and the
20   board has not offered any reason for its refusal to consider
21   application's application.  Id. paragraph 22.

22             In the complaint, plaintiff alleges that defendant
23   violated the Fourteenth Amendment, both, one, by acting in an
24   arbitrary and capricious manner; and two, by acting on the
25   basis of plaintiff's race.  Id. paragraphs 23 through 29.

1            As to procedural history, on August 2, 2018, the
2    plaintiff filed a motion for a temporary restraining order
3    prohibiting defendant from approving the sale of the unit and
4    the accompanying shares to a purchaser other than plaintiff.
5    Citing plaintiff's motion, Docket No. four.  On August 4, 2018,
6    the parties agreed the defendant would not take any action with
7    regard to apartment MW until the Court ruled on plaintiff's
8    application for a temporary restraining order.  The matter is
9    on my calendar this afternoon for purposes of ruling on
10   plaintiff's application for a TRO.
11           Turning to the legal standard.
12           "In the Second Circuit, the same legal standard
13   governs the issuance of preliminary injunctions and temporary
14   restraining orders." Citing *Mahmood v. Nielsen*,  312 F. Supp
15   3d.  417, (S.D.N.Y. 2018).  In order to obtain either a
16   preliminary injunction or a temporary restraining order a party
17   must show, "one, a likelihood of success on the merits or
18   sufficiently serious questions going to the merits to make them
19   a fair ground for litigation and a balance of hardships tipping
20   decidedly in plaintiff's favor; two, a likelihood of
21   irreparable injury in absence of injunction, three, that the
22   balance of hardships tips in the plaintiff's favor; and four,
23   that the public interest would not be disserved by the issuance
24   of an injunction."  Citing *Benihana Inc. v. Benihana Tokyo*,
25   LLC, 784 F.3d 887, 895 (2d. Cir. 2015).

Defendant contends that plaintiff cannot demonstrate a likelihood of success on the merits or that there are sufficiently serious questions going to the merits, because among other things, defendant is not a state actor.  Citing Defendant's Opposition Docket No. 9 at pages 3 through 6.

"The United States Constitution regulates only the government, not private parties," citing *Halleck* v. *Manhattan Community Access Corporation*, 882 F.3d 300, 310 (2d. Circuit 2018).  Accordingly, "A plaintiff pressing a claim of a violation of his constitutional rights under Section 1983 is required to show state action." Id.

Here, defendant is a private nonprofit corporation citing the Complaint, Docket No. 1, paragraph 8.  "A private entity may become a state actor only under the following limited conditions:  One, the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); two, when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state or the entity's functions are entwined with state policies ("the joint action test" or "the close nexus test"); or three, when the entity "has been delegated a public function by the state, ("the public function test").

Citing *Halleck*, 882 F3d. at 310. "The fundamental question under each test is whether the private entities

challenged actions are fairly attributable to the state." Citing *Fabrikant v. French*, 691 F.3d, 193 at 207 (2d. Cir. 2012).

Plaintiff does not argue here that defendant is a state actor under the compulsion test.

Moreover, "It is well established that the provision of low-cost supportive housed is not a public function within the meaning of Section 1983 because the provision of housing for the poor or for anyone else has never been the exclusive preserve of the state." Citing *George v. Pathways to Housing, Inc.*, 2012 WL 2512964 at *4 (S.D.N.Y June 29, 2012). See also Holden V. East Hampton Town, (E.D.N.Y. March 31, 2017) 2017 WL 1317825 at *5. ("Providing low-cost housing does not constitute a public function within the meaning of Section 1983 because it is not an activity or function exclusively reserved by the state.")

Accordingly, plaintiff's argument that defendant is a state actor is premised on the "joint action" or "close nexus test." Plaintiff's theory is that because defendant received various benefits from the city, including a reduction in property taxes and an exemption from the rent stabilization law and is subject to extensive regulation by the city, the joint action/close nexus test is satisfied. See plaintiff's brief, Docket No. 12 at page 4, complaint Docket No. 1 in paragraph 12.

           The City of New York's Department of Housing
Preservation and Development, commonly known as HPD, does not
sell properties to housing development fund corporations such
as defendant at market price, but instead at a price of $250
per apartment, citing the complaint paragraph ten.  In exchange
for accepting income restrictions on shareholders for the
duration of a regulatory agreement with HPD, the city offers
the co-op, among other benefits, a reduction in property taxes.
Id. paragraph 11.  Moreover, under New York's private housing
finance law, a government agency fixes the rental prices of
Housing Development Fund Corporation apartments, the use of
profits is restricted to capital improvements or to reduce
rentals and units are made available to "persons or families
whose probable aggregate annual income does not exceed six
times the rental of the dwelling, except that in the case of
persons or families with three or more dependents, such ratios
shall not exceed 7 to 1."  Citing the New York Private Housing
Finance Law, Section 576(1)(a) through c.

           "A Court's analysis of whether a private entity's
conduct meets [the close nexus] standard is a necessarily
fact-bound inquiry."  Citing *DeSouza v. Park W Apartments, Inc*,
2018 WL 2990099 at *16 (D. Conn. June 14, 2018).  Quoting *Lugar v. Edmondson Oil Company, Inc*, 457 U.S. 922 and 939 (1982).
"There are certain factors, however, which affirmatively do not
create state action." Id.  For example, a private entity does

not become a state actor for purposes of Section 1983, merely on the basis of the private entity's creation, funding, license, or regulation by the government."  Citing *Fabrikant*, 691 F.3d 25907.

Moreover, a private entity's receipt of a tax reduction or exemption does not establish the action.  See *Hadges v. Yonkers Racing Corp.*, 918 F2d. 1079, 1091-82 (2d. Cir (1990) (finding that *Yonkers Racing Corporation*, which operated a racetrack pursuant to a state license was not a state actor, even though it was, "subject to pervasive state statutory and regulatory control," received tax credits from the state, and the state gained, "greater revenues if [the racetrack] prospered." Also *Schlein v. Milford Hospital, Inc.*, 561 F2d. 427 at 428-29 (2d. Cir. 1977) (fact that hospital was state-licensing, regulated by the state health department, tax-exempt, and empowered by the state to annex contiguous land for expansion, was insufficient to find state action).  Also, *Ludwig's Drugstore, Inc. v. Forest City Enterprises, Inc.,* 2016 WL 915102 at *7 (E.D.N.Y. March 4, 2016) ("that Forest receives tax benefits and public funding does not suffice to allege that Forest engaged in state action").  Also, *Metz v. Herbert*, 243 F. Supp 3d 929, 939 (M.D. Tenn. 2017) (the fact that [defendant] allegedly received federal tax credits though the State of Tennessee for developing [low-income housing tax credit] eligible housing, does not alone render it liable for

1  violating the plaintiff's constitutional rights." *CF. Abdullahi*
2  *v. Pfizer, Inc.*, 562 F.3d 163 at 212 (2d. Cir. 2009) ("State
3  assistance by itself is insufficient.  The relevant question is
4  whether the decision makers were ostensibly state actors.
5  Using government property, government staff, and government
6  funds does not make a private entity a state actor when its
7  decisions are made independently of the state.")
8           Moreover, "It is not enough for plaintiff to plead
9  state involvement in some activity of the institution alleged
10 to have inflicted injury upon a plaintiff.  Rather, the
11 plaintiff must allege that the state was involved with the
12 activity that caused the injury giving rise to the action."
13 Citing *Abdullahi*, 562 F.3d 211.  "Action taken by private
14 entities with the mere approval or acquiescence of the state is
15 not state action.  Citing *Halleck* 882 F3d. at 310.
16          Here, plaintiff has not established that defendant's
17 challenged actions are fairly attributable to the state.  The
18 analysis in another Section 1983 case *Young v. Halle Housing*
19 *Housing Associates*, *L.P*, 152 F. Supp 2d., 355 at 362 (S.D.N.Y.
20 2001) is instructive here.  In *Young*, plaintiff challenged on
21 First and Fourteenth Amendment grounds, the overnight guest
22 policies of a Private Housing Development Fund Corporation,
23 which I'll refer to as an HDFC.  The HDFC was (1), "Totally
24 reliant upon government funding both for the acquisition and
25 rehabilitation funds of the [low-income residents] and for the

1    rent subsidy it is received for housing low-income tenants;
2    (2), subject to, 'city mandated rents, eligibility criteria for
3    residents, and the social services to be provided,' and (3),
4    paid by the city, 'to staff the building.'"  Citing *Young* 152
5    F. Supp 2d. at 363.  Despite the extensive regulation and
6    government assistance, the *Young* court concluded that there was
7    no state action because, "there was simply no evidence that
8    [the state] even know knew of, let alone approved the overnight
9    guest policy [challenged by plaintiff.]" Id. at page 364.
10            The reasoning in *Young* applies with equal force here.
11   Plaintiff has not offered any evidence that the state or city
12   knew of, let alone approved, defendant's rejection of
13   plaintiff's application, and defendant's receipt of tax
14   benefits and extensive regulation do not suffice to establish
15   state action.  See Id, also *Holmstrand v. Dixon Hous. Partners,*
16   *L.P.*, 2011 WL 2631834 at *4 (E.D. Cal. June 30, 2011) (holding
17   that a private housing provider was not a state actor, even
18   though it "received a tax credit through the low-income housing
19   tax credit program" and county tax assessor was a co-owner of
20   the apartment complex at issue).
21           The sole case on which plaintiff relies, the *512 East*
22   *11th Street HDFC v. Grimmet*, 181 A.D.2d 488 (1st Dep't 1992).
23   See plaintiff's brief, Docket No. 12 at page 4, is contrary to
24   the weight of the federal authority and distinguishable on its
25   facts.  In *Grimmet* the First Department found state action in

1    the provision of low-income housing by a private entity,
2    because, one, the certificate of incorporation "mandated that
3    it provide housing pursuant to the definition of low-income
4    families contained in the [private housing finance law]"; two,
5    the property could "not be sold or otherwise disposed of
6    without prior written approval of the Commissioner of Housing
7    Preservation and Development"; three, the "city's approval [was
8    required] before a tenant [could] be evicted"; and four, the
9    city had a property interest in the unit via "a right of
10   reversion in the event the landlord failed to abide by the
11   terms and conditions placed upon the property and its use."
12   Citing *Grimmet*, 181 A.D.2d at 489.

13            Here, there is no evidence that the state or city has
14   a property interest in the co-op at issue, or that defendant
15   needed the permission of the HPD Commissioner to reject an
16   applicant for admission to the co-op.  Moreover, as I noted
17   earlier, the Second Circuit has held that "a private entity
18   does not become a state actor merely on the basis of licensing
19   or regulation by the government."  Citing *Fabrikant*, 691 F.3d
20   at 207.

21            For these reasons, I conclude that plaintiff has not
22   demonstrated a likelihood of success on the merits or that
23   there are sufficiently serious questions going to the merits.
24   Accordingly, plaintiff's application for a temporary
25   restraining order is denied.

1          Is there anything else?

2          MR. JONES:  No, your Honor.

3          MR. SCHWARTZ:  No, your Honor.  Thank you.

4          THE COURT:  We're adjourned.

5          (Adjourned)