UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE DONOVAN,

                Plaintiff,

- against -

EAST 12TH STREET TENANTS HOUSING
DEVELOPMENT FUND CORP.,

                Defendant.

**ORDER**

18 Civ. 6950 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this Section 1983 action, Plaintiff Kyle Donovan alleges that the East 12th Street Tenants Housing Development Fund Corp. – a non-profit housing cooperative corporation – violated his rights under the Fourteenth Amendment by "refus[ing] to consider [his] purchase of [an apartment] after [he] entered [into] a contract to purchase a unit . . . along with the accompanying 250 shares in the corporation." (Cmplt. (Dkt. No. 1) ¶¶ 1, 5, 8) Plaintiff contends that Defendant violated his Fourteenth Amendment rights by "acting in an arbitrary and capricious manner," and by discriminating against him on the basis of his race. (Id. ¶¶ 23, 26)

## BACKGROUND

### I. FACTS

On May 11, 2018, Plaintiff entered into a contract of sale with the owner of Unit MW at 527 East 12th Street in Manhattan, in which he agreed to purchase the apartment for $300,000, and agreed to pay the purchase price in cash. (Id. ¶ 13) Plaintiff's income allegedly meets the cooperative's requirements. (Id. ¶ 15)

On June 9, 2018, Plaintiff submitted to Defendant's Board a finalized application to purchase the unit. (Id. ¶ 16) On June 18, 2018, the Board denied Plaintiff's application

without offering a reason. (Id. ¶ 17) The Board also declined to interview Plaintiff or otherwise consider him. (Id.)

On July 15, 2018, Plaintiff's counsel sent a letter to Defendant's Board, requesting that the Board reverse its decision, as the denial "had been made without any state[d] reason or inquiry." (Id. ¶ 18) Plaintiff's broker was later told – the Complaint does not reveal by whom – "that the Board did not like what it 'saw' when it ran a search of Plaintiff's name on www.google.com." (Id. ¶ 19) According to Plaintiff, when a Google search is performed on his name, images of Plaintiff appear that "show him to be an African-American man." (Id. ¶ 20) The Board never explained its reason for denying Plaintiff's application, and the unit continued to be listed for sale. (Id. ¶¶ 21-22)

## II. PROCEDURAL HISTORY

The Complaint was filed on August 2, 2018, and alleges that Defendant violated Plaintiff's rights under the Fourteenth Amendment by (1) acting in an "arbitrary and capricious manner"; and (2) discriminating against Plaintiff on the basis of his race. (Id. ¶¶ 23-29) With the Complaint, Plaintiff filed a motion for a temporary restraining order prohibiting Defendant from approving the sale of the unit and the accompanying shares to a purchaser other than Plaintiff. (Pltf. Mot. (Dkt. No. 4))

On August 28, 2018, this Court issued a bench ruling denying Plaintiff's application for a temporary restraining order, finding that Defendant is not a state actor, and thus cannot be sued under Section 1983. (See Bench Ruling Tr. (Dkt. No. 16))

On November 7, 2018, Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this Court does not have subject matter jurisdiction, because Plaintiff has not pled diversity, and there is no federal question jurisdiction. (See Def Br. (Dkt. No. 22))

Plaintiff filed an opposition on November 28, 2018. (Pltf. Opp. (Dkt. No. 23)) On November 30, 2018, however, Plaintiff filed a letter seeking leave to amend to add claims pursuant to 42 U.S.C. § 3604(a), the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296(5)(a)(1), and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107(5)(1). (Nov. 30, 2018 Ltr. (Dkt. No. 29)) Defendant opposes Plaintiff's request for leave to amend. (See Dec. 5, 2018 Ltr. (Dkt. No. 27))

## DISCUSSION

### I. DEFENDANT'S MOTION TO DISMISS

#### A. Rule 12(b)(1) Standard

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction) . . . ." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When subject matter jurisdiction is challenged, plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).

In considering a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements

3

contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings.") (citing Makarova, 201 F.3d at 113). In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, 03 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

### B. Analysis

Plaintiff does not assert that there is diversity jurisdiction in this case. Accordingly, whether this Court has subject matter jurisdiction depends on the existence of a federal question. 28 U.S.C. § 1331; see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1018 (2d Cir. 2014) ("Where, as here, there is no diversity of citizenship between the parties, we look to whether the case 'aris[es] under the Constitution, laws, or treaties of the United States' to determine whether federal jurisdiction is properly exercised." (quoting 28 U.S.C. § 1331)). Defendant contends there is no subject matter jurisdiction here, because Defendant is not a state actor and, therefore, not subject to regulation under the Fourteenth Amendment. (Def. Br. (Dkt. No. 22) at 6)[1]

"[T]he United States Constitution regulates only the Government, not private parties." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 941 F.2d 1292, 1295 (2d Cir. 1991). Accordingly, "[a] plaintiff pressing a claim

---

[1] The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case filing system.

of violation of his constitutional rights under § 1983 is . . . required to show state action." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003).

Here, Defendant is a private non-profit corporation that receives a partial reduction in property taxes from the government in exchange "for accepting income restrictions on shareholders." (Cmplt. (Dkt. No. 1) ¶¶ 8, 11) "[T]he actions of a nominally private entity are attributable to the state when":

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).

Here, neither the Complaint nor Plaintiff's opposition brief alleges that Defendant acted pursuant to the state's "coercive power," or that it is "controlled" by the state. Accordingly, the "compulsion test" is not met. Moreover, "[i]t is well established that the provision of low-cost supportive housing is not a 'public function' within the meaning of section 1983, because the provision of housing, for the poor or for anyone else, has never been the exclusive preserve [of] the state[.]" George v. Pathways to Hous., Inc., No. 10 CIV. 9505 ER, 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012) (internal quotation marks and citations omitted); see also Holden v. E. Hampton Town, No. 15-CV-4478, 2017 WL 1317825, at *5 (E.D.N.Y. Mar. 31, 2017) ("Providing low-cost housing does not constitute a 'public function'

5

within the meaning of Section 1983 because it is not an activity or function exclusively reserved by the state.").

As to the "joint action" or "close nexus" test, Plaintiff argues that because Defendant receives various benefits from the City of New York – including a reduction in property taxes and an exemption from the Rent Stabilization Law – and is subject to extensive City regulation, the joint action/close nexus test is satisfied. (See Pltf. Br. (Dkt. No. 23) at 3) This argument is not persuasive.

The City of New York's Department of Housing Preservation and Development ("HPD") does not sell properties to Housing Development Fund Corporations ("HDFCs") such as Defendant at market price; instead, properties are sold at a price of $250 per apartment. (Cmplt. (Dkt. No. 1) ¶ 10) In exchange for accepting income restrictions on shareholders for the duration of a regulatory agreement with HPD, "the City offers the co-op, among other benefits, a reduction in property taxes." (Id. ¶ 11) Moreover, under New York's Private Housing Finance Law, a government agency fixes the rental prices of HDFC apartments, the use of profits is restricted to capital improvements or to reduce rentals, and units are made available to "persons or families whose probable aggregate annual income does not exceed six times the rental . . . of the dwellings . . . , except that in the case of persons or families with three or more dependents, such ratio shall not exceed seven to one." N.Y. Priv. Hous. Fin. Law § 576(1)(a)-(c).

"A court's analysis of whether a private entity's conduct meets [the close nexus] standard is a 'necessarily fact-bound inquiry.'" DeSouza v. Park W. Apartments, Inc., No. 3:15-CV-01668 (MPS), 2018 WL 2990099, at *16 (D. Conn. June 14, 2018) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 (1982)). "There are certain factors, however, which affirmatively do not create state action." Id. For example, "a private entity does not become a

6

state actor for purposes of § 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" Fabrikant, 691 F.3d at 207 (quoting Cranlye v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 112 (2d Cir. 2003)).

Likewise, a private entity's receipt of a tax reduction or exemption does not establish state action. See Hadges v. Yonkers Racing Corp., 918 F.2d 1079, 1081-82 (2d Cir. 1990) (finding that Yonkers Racing Corporation, which operates a racetrack pursuant to a state license, is not a state actor, even though it is "subject to pervasive State statutory and regulatory control," receives tax credits from the state, and provides "greater revenues [to the state if it] prospers"); Schlein v. Milford Hospital, Inc., 561 F.2d 427, 428-29 (2d Cir. 1977) (although hospital is state-licensed, regulated by the state health department, tax exempt, and empowered by the state to annex contiguous land for expansion, it did not engage in "state action"); Ludwig's Drug Store, Inc. v. Forest City Enterprises, Inc., No. 13-CV-6045 (MKB), 2016 WL 915102, at *7 (E.D.N.Y. Mar. 4, 2016) ("That Forest receives tax benefits and public funding does not suffice to allege that Forest . . . engaged in state action."); Metz v. Herbert, 243 F. Supp. 3d 929, 939 (M.D. Tenn. 2017) ("The fact that [defendant] allegedly received federal tax credits through the State of Tennessee for developing [low income housing tax credit]-eligible housing . . . does not, alone, render it liable for upholding the plaintiffs' constitutional rights."); cf. Abdullahi v. Pfizer, Inc., 562 F.3d 163, 212 (2d Cir. 2009) ("State assistance by itself is insufficient – the relevant question is whether the decisionmakers were ostensibly state actors . . . . Using government property, government staff, and even government funds does not make a private entity a state actor when its decisions are made independently of the state.").

Moreover, "it 'is not enough . . . for a plaintiff to plead state involvement in some activity of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff

7

must allege that the state was involved with the <u>activity that caused the injury</u> giving rise to the action." Abdullahi v. Pfizer, Inc., 562 F.3d 163, 211 (2d Cir. 2009) (quoting Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257-58 (2d Cir. 2008)) (emphasis in original). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999).

Here, Plaintiff has not established that Defendant's challenged actions are fairly attributable to the state. As this Court stated in its bench ruling denying Plaintiff's request for a temporary restraining order, the analysis in another Section 1983 case – Young v. Halle Hous. Assocs., L.P., 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001) – is instructive here. (See Bench Ruling Tr. (Dkt. No. 16) at 9:17-10:20) In Young, plaintiff challenged on First and Fourteenth Amendment grounds the overnight guest policies of a private HDFC. Young, 152 F. Supp. 2d at 360. The HDFC was (1) "'totally reliant' upon government funding both for the acquisition and rehabilitation costs of the [low-income residence] and for the rent subsidies it receive[d] for housing low income tenants"; (2) subject to "City mandate[d] rents, [and] eligibility criteria for residents"; and (3) paid by the City "to staff the building." Id. at 363. Despite that extensive regulation and government assistance, the court concluded that there was no state action, because "[t]here [wa]s simply no evidence that [the state] even knew of, let alone approved, the guest policy [challenged by plaintiff]." Id. at 364.

The reasoning in Young applies with equal force here. Plaintiff has not offered any evidence that the state or city knew of, let alone approved of, Defendant's rejection of Plaintiff's application, and the fact that Defendant receives tax benefits and is the subject of extensive regulation does not suffice to establish state action. See id.; Holmstrand v. Dixon Hous. Partners, LP, No. 2:10-CV-01751-MCE, 2011 WL 2631834, at *4 (E.D. Cal. June 30,

2011) (holding that private housing provider was not state actor even though it "received a tax credit through the Low Income Housing Tax Credit program" and county tax assessor was a co-owner of the apartment complex at issue).

512 E. 11th St. HDFC v. Grimmet, 181 A.D.2d 488 (1st Dep't 1992), cited by Plaintiff (see Pltf. Br. (Dkt. No. 23) at 3), is contrary to the weight of federal authority and distinguishable on its facts. In Grimmet, the First Department found state action in the provision of low-income housing by a private entity because (1) the certificate of incorporation "mandat[ed] that it provide housing pursuant to the definition of low income families contained in [the Private Housing Finance Law]"; (2) the property could "not be sold or otherwise disposed of without prior written approval of the Commissioner of Housing Preservation and Development"; (3) the "City's approval [was required] before a tenant [could] be evicted"; and (4) the City had a property interest in the unit via "a right of reversion in the event the landlord fail[ed] to abide by the terms and conditions placed upon the property and its use." Grimmet, 181 A.D.2d at 489.

Here, there is no evidence that (1) the state or city has a property interest in the co-op at issue, or (2) that Defendant needed the permission of HPD to reject an applicant for admission to the co-op. Moreover, as noted earlier, the Second Circuit has held that "a private entity does not become a state actor . . . merely on the basis of . . . licensing[] or regulation by the government." Fabrikant, 691 F.3d at 207.

Accordingly, Defendant's motion to dismiss Plaintiff's claims for lack of subject matter jurisdiction is granted.

## II.   LEAVE TO AMEND

Plaintiff has filed a letter seeking leave to amend to add claims under 42 U.S.C. § 3604(a), the NYSHRL, and the NYCHRL. (Nov. 30, 2018 Ltr. (Dkt. No. 29)

Rule 15(a)(2) provides that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, however, this Court cannot grant Plaintiff leave to amend to assert an entirely new basis for subject matter jurisdiction, because the Second Circuit does not allow "the practice of retroactive jurisdiction, i.e., permitting a plaintiff belatedly to attempt to assert subject matter jurisdiction by amendment." Broad v. DKP Corp., No. 97 CIV. 2029 (LAP), 1998 WL 516113, at *5 (S.D.N.Y. Aug. 19, 1998) (citing Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 893-94 (2d Cir. 1983)).

Pressroom is instructive on this point. In that case, defendant filed a Rule 12(b)(1) motion to dismiss, alleging that plaintiff did not have standing to sue. Pressroom, 700 F.2d at 891. Plaintiff then moved to amend to add individual pension-fund participants as plaintiffs to cure the jurisdictional defect. Id. The court denied the motion to amend, noting that the complaint was properly dismissed for lack of subject matter jurisdiction, and that plaintiff could not seek to "substitute a new action over which there is jurisdiction for one where it did not exist." Id. at 893; see also Broad, 1998 WL 516113, at *4 ("[J]urisdiction is a threshold matter, without which I do not have the authority to entertain plaintiff's cross-motion to amend.

Because defendant's [Rule 12(b)(1)] motion must be granted . . . , the action as a whole should be dismissed."). Accordingly, this action will be dismissed without leave to amend.

## III.   DEFENDANT'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES

Defendant argues that it is entitled to an award of attorney's fees, because "plaintiff's action was frivolous, unreasonable, and without foundation." (Def. Br. (Dkt. No. 22) at 9) "The general rule regarding awarding of attorneys' fees is that the prevailing party in litigation may not recover attorneys' fees from the losing party, and each party pays its own fees." Brotman v. Sant Cassia Inv. Mgmt., No. 96 CIV. 6727 (PKL), 1997 WL 401671, at *4 (S.D.N.Y. July 16, 1997). "The Supreme Court has recognized the following three exceptions to the general rule: (1) cases in which a statute or enforceable contract provides for an award of attorneys' fees; (2) cases in which the prevailing plaintiff confers a common benefit upon a class or fund; and (3) cases in which a party wilfully disobeys a court order or 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. (quoting Alveska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S.C. 240, 247 (1975)). The first two exceptions are not applicable here. As to the third exception, there is no evidence that Plaintiff disobeyed a court order, nor had Defendant made a showing that Plaintiff "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alveska Pipeline Serv., 421 U.S.C. at 247. Accordingly, Defendant's application for an award of attorneys' fees is denied.

## **CONCLUSION**

For the reasons stated above, (1) Defendant's motion to dismiss (Dkt. No. 22) is granted; (2) Defendant's request for an award of attorneys' fees is denied; and (3) Plaintiff's request for leave to amend (Dkt. No. 29) is denied. The Clerk of Court is directed to terminate Dkt. Nos. 22, 29.

Dated: New York, New York
September 24, 2019

SO ORDERED.

*Paul A. Gardephe*
Paul G. Gardephe
United States District Judge